UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| RICHARD G. CONVERTINO, | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. 04-0236 (RCL) |
| UNITED STATES DEPARTMENT OF JUSTICE, et al., | ) |
| Defendants. | ) |

**MEMORANDUM OPINION**

This matter comes before the Court on the defendants' Partial Motion [15] to Dismiss. Upon consideration of the defendants' motion, the opposition thereto, the reply brief, the applicable law, and the entire record herein, the Court concludes that the defendants' motion will be granted. The Court agrees with the defendants' contention that plaintiff has failed to exhaust his administrative remedies under the Civil Service Reform Act ("CSRA") and that the claims raised in Count I of plaintiff's Complaint therefore must be dismissed for lack of subject-matter jurisdiction.

**FACTUAL BACKGROUND**

Plaintiff Richard G. Convertino, an Assistant United States Attorney in the United States Attorney's Office for the Eastern District of Michigan, brings this lawsuit against his employer, the United States Department of Justice ("DOJ"), and various DOJ officials sued in their official capacities. Plaintiff alleges that he was subjected to a variety of adverse employment actions in

retaliation for his criticism of the DOJ's handling of a criminal investigation and trial, and for his testimony, given under subpoena, before a committee of the United States Senate. Plaintiff claims that these personnel decisions violated his rights under the Administrative Procedure Act, 5 U.S.C. § 551 et seq., the Lloyd-LaFollette Act, codified at 5 U.S.C. § 7211, and the First Amendment to the United States Constitution ("Count I").

Between September 2001 and September 2003, Mr. Convertino served as the lead prosecuting attorney for the DOJ in United States v. Koubriti. Plaintiff alleges that during preparation for trial in Koubriti, he voiced concerns regarding the operations of government and the effectiveness of the DOJ in the war on terror. On or about September 2, 2003, plaintiff was contacted by an investigator from the Senate Finance Committee who informed plaintiff that the Committee's Chairman, Senator Charles E. Grassley, wanted plaintiff to testify about the factual background of the Koubriti case. Compl. ¶¶ 38, 47. On September 7, 2003, plaintiff was served a subpoena requiring that he testify before the Senate Finance Committee. *See* Compl., ¶ 64. In compliance with the subpoena, Mr. Convertino appeared before the Senate Finance Committee on September 9, 2003, and for six minutes gave a brief summary and overview of the facts in Koubriti. Compl. ¶72.

Allegedly as a result of these activities, plaintiff claims that he was (1) removed from the Koubriti case, Compl. ¶ 49; (2) informed by an unidentified Assistant United States Attorney ("AUSA") that "he was in danger of losing his job," Compl. ¶ 52; (3) informed that his supervisors intended to reassign him from "his position as an Assistant United States Attorney in the Organized Crime Strike Force to a newly created position of full time 'Duty AUSA'" which would require plaintiff to "handle exceedingly simple and mundane matters . . . [and] other

routine tasks on a full time and daily basis," Compl. ¶ 77; (4) subjected to a "review" of his cases, Compl. ¶¶ 96-98; and (5) subjected to attempts to discredit him with accusations of "leaking" information in violation of federal law. Compl. ¶¶ 86-87.  For the claims raised in Count I, plaintiff seeks declaratory and injunctive relief under the Administrative Procedure Act ("APA"), 5 U.S.C. § 551 et seq., the Lloyd-LaFollette Act, 5 U.S.C. § 7211, and the First Amendment to the United States Constitution.

## DISCUSSION

Defendants argue that dismissal is required under Federal Rule of Civil Procedure 12(b)(1) because plaintiff failed to exhaust his administrative remedies provided by the CSRA prior to filing suit in this Court.  Accordingly, the government insists, Count I should be dismissed for lack of subject matter jurisdiction, in accordance with the D.C. Circuit's approach in Steadman v. Governor, United States Soldiers' & Airmen's Home, 918 F.2d 963, 968 (D.C. Cir. 1990), where the court concluded that the plaintiffs' failure to exhaust administrative remedies in a labor dispute required reversal and "remand[] with instructions to dismiss for lack of subject matter jurisdiction."  This Court agrees.

Pursuant to Federal Rule of Civil Procedure 12(b)(1), the court must dismiss claims over which it has no subject matter jurisdiction.  In evaluating whether it has subject matter jurisdiction, the court must construe the complaint liberally, and give the plaintiff the benefit of all reasonable inferences.  See Tozzi v. EPA, 148 F. Supp. 2d 35, 41 (D.D.C. 2001) (citing Scheuer v. Rhodes, 416 U.S. 232 (1974)).  The court must view the allegations as a whole, and a conclusory averment of subject matter jurisdiction negated by other allegations in the pleading should result in dismissal.  See id. at 35, 41 (citation omitted).

It is a "long-settled rule of judicial administration that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." Bethlehem Shipbuilding Corp. v. MacKenzie, 303 U.S. 41, 50–51 (1938); see also id. at 51 n.9 (collecting cases); Randolph-Shepard Vendors of Am. v. Weinberger, 795 F.2d 90, 104 (D.C. Cir. 1986); Utah Power & Light Co. v. ICC. The exhaustion doctrine functions primarily to forestall the "premature interruption of the administrative process" by the courts. McKart v. United States, 395 U.S. 185, 193 (1969). In addition to preserving the "autonomy of the administrative agency . . . to exercise its expertise and discretion on appropriate matters," Weinberger, 795 F.2d at 105, however, a vigorous exhaustion requirement "also promotes effective and efficient judicial review by ensuring that such review is of a fully developed factual record, and undertaken with the benefit of the agency's exercise of discretion or application of expertise." Id. (citing McKart, 395 U.S. at 194; Athlone Indus. v. Consumer Prod. Safety Comm'n, 707 F.2d 1485, 1488 (D.C. Cir. 1983)).

The D.C. Circuit has explained that "jurisdictional exhaustion," actually limits federal court jurisdiction where "Congress requires resort to the administrative process as a predicate to judicial review," and is an extension of congressional power "to control the jurisdiction of the federal courts." Avocados Plus, Inc. v. Veneman, 370 F.3d at 1247 (D.C. Cir. 2004) (citing EEOC v. Lutheran Soc. Servs., 186 F.3d 959, 963–64 (D.C. Cir. 1999)). An exhaustion requirement will only be of the jurisdictional sort, and therefore not subject to discretionary excuse, where "Congress states in clear, unequivocal terms that the judiciary is barred from hearing an action until the administrative agency has come to a decision." I.A.M. Nat'l Pension

Fund Benefit Plan C v. Stockton Tri Indus., 727 F.2d 1204, 1208 (D.C. Cir. 1984) (quoted in Avocados Plus, 370 F.3d at 1248).

This case involves a federal employee subject to the provisions of the Civil Service Reform Act, Pub. L. No. 95-454, 92 Stat.1111, as amended (codified at various sections of Title 5 of the United States Code). A principal purpose of the CSRA is to "provide increased protection for 'whistleblowers,' federal employees seeking to disclose wrongdoing in the government." Frazier v. Merit Systems Protection Bd., 672 F.2d 150, 152 (D.C. Cir. 1982); accord Wren v. Merit Systems Protection Bd., 681 F.2d 867, 872 (D.C. Cir. 1982) (noting the "primary purpose" of the CSRA is to "safeguard employees . . . who 'blow the whistle' on illegal or improper agency conduct"). Thus, the CSRA explicitly prohibits taking, failing to take, or threatening to take or fail to take, a personnel action "because of" various forms of "whistleblowing." 5 U.S.C. § 2302(b)(8)-(b)(9) (2000). Section 2302 of the CSRA also provides that this subsection "shall not be construed to authorize the withholding of information from the Congress or the taking of any personnel action against an employee who discloses information to the Congress." Id. § 2302(b). Thus, the facts alleged in Count I clearly give rise to claims cognizable under the CSRA's administrative remedial process.

The CSRA replaced the preexisting "patchwork system with an integrated scheme of administrative and judicial review, designed to balance the legitimate interests of various categories of federal employees with the needs of sound and efficient administration." United States v. Fausto, 484 U.S. 439, 445 (1988). One of the fundamental "structural elements" of this integrated scheme of review "is the primacy of the MSPB [Merit Systems Protection Board] for administrative resolution" of personnel disputes, and "the primacy of the United States Court of

Appeals for the Federal Circuit for judicial review." Id. at 449.  In Bush v. Lucas, the Supreme Court held that the CSRA consists of "comprehensive procedural and substantive provisions giving meaningful remedies against the United States." 462 U.S. 367, 368 (1983).

Mr. Convertino, as an employee of the federal government, has a right to file a complaint under the CSRA with the Office of Special Counsel ("OSC").  See 5 U.S.C. § 1214(a)(1)(A) (2000).  After review, if the OSC finds "reasonable grounds" to believe that a prohibited personnel practice has occurred, it must report its finding to the Merit System Protection Board ("MSPB"), the involved Agency, and to Office of Personal Management.  Id. § 1214(b)(2)(B).  If the agency fails to correct the practice within a reasonable period of time, the OSC may – but need not – seek corrective action with the MSPB.  Id. § 1214(b)(2)(C).  The OSC is required to act on allegations of prohibited personnel practices within 240 days, with an exception for situations in which the person making the allegation agrees to an extension of time.  Id. § 1214(b)(2)(A).  Further appeal rights to the MSPB may be available.  See, e.g., 5 U.S.C. §§ 1214(a)(3) & 1221; 5 C.F.R. Pt. 1209.  MSPB rules specifically provide that an employee "may request a stay of a personnel action allegedly based on whistleblowing." 5 C.F.R. § 1209.8.

Because plaintiff did not employ the process provided for in the CSRA, this Court lacks subject matter jurisdiction over the claims in Count I of plaintiff's complaint.  In the CSRA, Congress passed an "enormously complicated and subtle scheme to govern employee relations in the federal sector . . . ," Steadman, 918 F.2d at 967, which creates remedies generally considered to be exclusive.  See American Postal Workers Union, AFL-CIO v. U.S. Postal Service, 940 F.2d 704, 709 (D.C. Cir. 1991) ("The CSRA provides an exclusive framework for judicial review of adverse disciplinary actions taken by federal agencies."); accord Spagnola v. Mathis, 809 F.2d

16, 30 (D.C. Cir. 1986) ("the CSRA precludes resort to other statutory schemes for aggrieved federal employees raising nonconstitutional claims against their employers"), aff'd en banc, 809 F.2d 40 (D.C. Cir. 1987) .  The D.C. Circuit has established that "[u]nder the CSRA, exhaustion of administrative remedies is a jurisdictional prerequisite to suit."  Weaver v. United States Information Agency, 87 F.3d 1429, 1433 (D.C. Cir. 1996) (citing Steadman, 918 F.2d at 966-68).

Further, federal employees, may not bypass the CSRA exhaustion requirement by submitting their personnel-related claims to a federal court under other statutes, such as those upon which plaintiff here attempts to rely. See, e.g., Harrison v. Bowen, 815 F.2d 1505, 1514-15 (D.C. Cir. 1987) (noting that claims cognizable under the CSRA cannot be brought directly to federal court through the APA) (citing, inter alia, Carducci v. Regan, 714 F.2d 171, 174 (D.C. Cir. 1983)); see also Fausto, 484 U.S. at 443-455 (concluding that claims under the Back Pay Act cannot be brought directly to federal court but, rather, must be pursued through CSRA scheme). Nor does the CSRA itself provide any private right of action.  See Harrison, 815 F.2d at 1513 ("removed and reassigned employees do not have an implied right of action under the CSRA to enforce the prohibition against reprisals for whistleblowing, but must seek relief through the OSC because such reprisals constitute a 'prohibited personnel practice'") (citations omitted).

Mr. Convertino's constitutional claim also cannot escape the exhaustion requirement of the CSRA.  The D.C. Circuit has found that the public interest in upholding the structure created by Congress for addressing personnel-related matters is so strong that federal employees "may not circumvent that structure even if their claim is based . . . on the Constitution."  Steadman, 918 F.2d at 967.  Thus, for constitutional claims seeking equitable relief, as for other types of claims, "exhaustion of [CSRA] remedies is a jurisdictional prerequisite to suit."  Weaver, 87 F.3d

at 1433 (citing Steadman, 918 F.2d at 966-68).  This is because the federal judiciary should not "improperly interject [itself], at a premature stage into the CSRA's carefully developed system of administrative review."  Steadman, 918 F.2d at 966; see also Martin v EPA, 271 F. Supp. 2d 38, 45 (D.D.C. 2002).[1]

      This Circuit has repeatedly affirmed the dismissal of claims arising under the Constitution for lack of jurisdiction where plaintiffs failed to submit their claims through the CSRA process.  In Weaver v. U.S. Information Agency, for example, the Court of Appeals rejected First Amendment-based claims for equitable and declaratory relief brought by a federal employee plaintiff who claimed that she had been the subject of an "oral admonishment" because she had published an article without the proper required prepublication review.  87 F.3d at 1431-32.  Finding that the comprehensive procedures available to plaintiff under the CSRA provided an effective opportunity for redress of her claims, the Court dismissed her constitutional claims for failure to exhaust these procedures, noting that federal judicial review was available only at "the end of the tunnel."  See 87 F.3d at 1433-35; see also Steadman, 918 F.2d at 967-68 (reversing district court's finding of jurisdiction and rejecting federal employee's due process claim where employee had failed to exhaust administrative remedies).

      As was the case in Weaver, here plaintiff's First Amendment claim is predicated on the same facts as his claims under the APA and the Lloyd-LaFollette Act.  See 87 F.3d at 1434 ("Weaver's constitutional claim is intertwined with her CSRA claim in the most absolute manner

---

[1] As the court in Martin noted, "[T]he exhaustion requirement exists because it serves four important purposes.  First, it prevents litigants from circumventing Congress' carefully crafted remedial scheme.  Second, it gives agencies the opportunity to correct their own mistakes or to exercise the discretion they have been granted.  Third, it eases the burden on the federal judiciary by allowing the parties and the agency to develop the facts in an administrative forum.  Finally, it will either focus the issues for judicial review or settle the dispute so that judicial review will become unnecessary."

imaginable; it is its sole basis."). Because those claims fall within the ambit of the CSRA, as discussed above, any "corrective action" that might be available to plaintiff through the administrative review process could be "fully effective" in remedying the constitutional violation he alleges here. See Cloude v. Dept. of the Navy, 83 M.S.P.R. 184, 186 (M.S.P.B. 1999) ("When an agency is ordered to cancel an adverse action, the employee must be restored to the status quo ante."); see also Steadman, 918 F.2d at 967 (when claims that fall within the ambit of the CSRA and constitutional claims are "premised on the same facts" and the CSRA remedy would be "fully effective in remedying the constitutional violation," exhaustion is mandated); Martin, 271 F. Supp. 2d at 45 (the Court of Appeals has "summarily rejected" the argument that an administrative remedy is ineffective simply because "an agency cannot provide injunctive relief") (citing Weaver, 87 F.3d at 1434). Under these circumstances, which are at the core of the interests underpinning the general preference for exhaustion of administrative remedies, the Court rigidly enforces the CSRA exhaustion requirement.

This, accordingly, is not the "unusual case in which the constitutional claim raises issues totally unrelated to the CSRA procedures," and there is thus reason to consider whether any exception to the exhaustion requirement can be made here. See Steadman, 918 F.2d at 967. This Court, therefore, cannot take jurisdiction over plaintiff's constitutional claim until plaintiff has exhausted his CSRA remedies.[2]  Id. at 968. The Court of Appeals has made it quite clear that it

---

[2] The fact that this first claim is framed in constitutional terms is of no consequence for the exhaustion inquiry. The D.C. Circuit has held that "when an alleged constitutional violation 'is intertwined with a statutory one, and [the legislature] has provided the machinery for the resolution of the latter,' the plaintiff must exhaust administrative remedies before a district court may hear [the] case." Nat'l Treasury Employees Union v. King, 961 F.2d 240, 243 (D.C. Cir. 1992) (quoting Steadman, 918 F.2d at 963). In other words, "when the statutory and constitutional claims are 'premised on the same facts' and 'the administrative process [is] fully capable of granting full relief,' exhaustion is required." Id. (citing Andrade v. Lauer, 729 F.2d 1475, 1493 (D.C. Cir. 1984)); see also Marine Mammal Conservancy, 134 F.3d at 413–14 (D.C. Cir. 1998) (the plaintiff would be "very much mistaken in

is only "if a constitutional claim survives an unsuccessful journey through the administrative process [that] the federal courts are open." Id.; accord Weaver, 87 F.3d at 1433 (federal court review over a constitutional claim may be available "at the end of the line").  Plaintiff here has failed to take that journey.  As a result, and as is well-established in this Circuit, the claims raised in Count I of his Complaint, including those arising under the First Amendment, must be dismissed for lack of jurisdiction.

## CONCLUSION

For the reasons stated herein, Count I of plaintiff's complaint will be dismissed for lack of subject-matter jurisdiction.

A separate Order will issue this date.


Signed by Royce C. Lamberth, United States District Judge, October 19, 2005.

---

believing that there is some bright-line rule allowing litigants to bypass administrative [processes] simply because one or all of their claims are constitutional in nature").