|  |  |  |
|---|---|---|
| RICHARD G. CONVERTINO | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 04-00236 (RCL) |
| | ) | |
| v. | ) | |
| | ) | |
| UNITED STATES DEPARTMENT OF JUSTICE, | ) | |
| *et al.* | ) | |
| | ) | |
| Defendants. | ) | |

## DECLARATION OF JONATHAN TUKEL

JONATHAN TUKEL declares and states as follows:

1.  In connection with my employment at the United States Attorney's Office for the Eastern District of Michigan, I was provided with a Department of Justice ("DOJ") electronic mail account with the following address: Jonathan.Tukel@usdoj.gov.

2.  I used my DOJ-provided electronic mail address to send and receive correspondence relating to my job responsibilities and personal correspondence, as permitted by the DOJ's policies concerning electronic mail and Internet use. (Relevant policies attached hereto as Exhibits A through C).

3.  At all times, I was issued a DOJ computer for my use in the office, and which also could be used as a laptop at home and while travelling. When used either inside or outside the office, the computer could access the DOJ email system.

4.  At all times, my electronic mail was password protected (*see* Exhibit D, Appendix A); thus, no third parties could access any material in my electronic mail other than through a collection of data from DOJ's electronic servers. DOJ Information Technology personnel accessed my DOJ-issued computer in connection with maintaining and upgrading the DOJ's electronic systems. However, I understand that performing systems maintenance and upgrades does not involve accessing personal files, including electronic mail.

5.  I retained Cadwalader, Wickersham & Taft LLP ("Cadwalader") in 2004 in anticipation of potential litigation.

6.  Between August 2004 and December 2004, I communicated directly with my personal counsel, James Robinson, Michael Horowitz, and Adam Lurie of Cadwalader using my DOJ-provided electronic mail address (Jonathan.Tukel@usdoj.gov).

7.   All communications sent via Jonathan.Tukel@usdoj.gov to Messrs. Robinson, Horowitz, and Lurie (or any other representative of Cadwalader) are privileged communications which directly relate to the issues in the instant lawsuit.

8.   I have not shared any communications sent via Jonathan.Tukel@usdoj.gov to Messrs. Robinson, Horowitz, or Lurie (or any other representative of Cadwalader) with third parties, including non-DOJ persons.

9.   I have not waived the attorney-client privilege that exists among Messrs. Robinson, Horowitz, Lurie and myself (and any other representatives of Cadwalader).

10.  I deleted all electronic mail sent or received from Messrs. Robinson, Horowitz, and Lurie (or any other representative of Cadwalader) from my electronic mail inbox immediately after reading it, and it would have been my practice to empty the electronic trash bin where deleted messages are temporarily stored. Thus, I was unaware that copies of privileged communications between Cadwalader and myself were located in any DOJ electronic system until I was notified by defense counsel in April 2009 that such correspondence was collected.

11.  I have never provided (or been asked to provide) my DOJ-issued computer to anyone within the DOJ, including anyone in the United States Attorney's Office for the Eastern District of Michigan, DOJ Criminal Division, Executive Office of U.S. Attorneys, Executive Office of U.S. Trustees, or Assistant Attorney General for Administration.

12.  I am not aware that my electronic mail sent from Jonathan.Tukel@usdoj.gov was monitored by the DOJ, as described in DOJ policies, even though DOJ policy permits monitoring under certain circumstances. (*See* Exhibits A through C).

13.  I am not aware that, in practice, the DOJ randomly audits or monitors (as described in DOJ policies) employees' DOJ-issued computers to monitor electronic mail even though DOJ policy permits monitoring for certain purposes. (*See* Exhibits A through C).

14.  I was not informed that my electronic mail, sent via Jonathan.Tukel@usdoj.gov, was being collected by anyone within the DOJ prior to such a collection.

15.  At all times, I took reasonable steps to ensure the confidentiality of my electronic mail, including all electronic mail exchanged between Cadwalader and myself.


I declare under penalty of perjury that the foregoing is true and correct. Executed on July 31, 2009.

_____/s/ Jonathan Tukel_____

# Exhibit A

## to Declaration of Jonathan Tukel dated July 31, 2009

**U.S. Department of Justice**

*Washington, D.C. 20530*

January 6, 2000

# MEMORANDUM FOR JUSTICE MANAGEMENT DIVISION EMPLOYEES

FROM:  STEPHEN R. COLGATE, Assistant Attorney General for Administration

SUBJECT:  Misuse of Email and Internet Privileges

On several occasions I have written to all Justice Management Division (JMD) employees about the appropriate use of the Internet. These memoranda were intended to apply to the use of email systems, whether internal to the Department or over the Internet. The great majority of JMD employees have clearly understood and complied with the guidance those memoranda offered. Regrettably, a few of you have not.

I have recently become aware that a significant number of offensive electronic messages, some sexually explicit (including pornographic photographs) have been transmitted and received by employees throughout JMD.  We know who distributed the offensive material, and we know to whom it was sent.

I am sending this memorandum to all of you as a caution:  unrestricted access to the Internet and use of government e-mail for non-work purposes are privileges we have extended to our workforce.  In return, we require that employees conduct themselves professionally and refrain from using Department resources for offensive activities.  **The use of DOJ systems to view or transmit sexually explicit material is strictly prohibited and we will not tolerate it.  Those who disregard this policy face disciplinary action, up to and including their removal from the Federal service.**

JCON is a Department of Justice system. When you use it, you are consenting to monitoring, among other things, to identify improper use and to ensure the safety and security of our workplace. We will be vigorous in our monitoring efforts.  Moreover, we encourage employees who receive offensive material over JCON from coworkers to report it to their supervisors. Supervisors should bring such matters to the attention of their Staff Directors and the Personnel Staff's Employee and Labor Relations Section.

**Exhibit B**

**to Declaration of Jonathan Tukel dated July 31, 2009**

DOJ 2740.1



USE AND MONITORING OF DOJ COMPUTERS AND COMPUTER SYSTEMS

**Approval Date:** Nov. 7, 2005

**Approved By:**     PAUL R. CORTS
                     Assistant Attorney General
                     for Administration

**Distribution:** BUR/H-1; OBD/H-1; SPL-23

**Initiated by:** Justice Management Division
                   Office of General Counsel

1.  **PURPOSE**. This order states the Department's policy on the use of
    departmental computers and computer systems, the lack of
    expectation of privacy with respect to such use, and authorized
    monitoring or access to information on departmental computers and
    computer systems.

2.  **SCOPE**. This policy applies to all classified and unclassified
    computer systems and peripheral devices (such as Personal
    Electronic Devices) that are acquired for use by, owned,
    operated, and managed by a departmental component.  Use of a
    privately-owned computer or device to connect to a departmental
    computer system constitutes use of a departmental computer system
    while connected.   This policy applies to all Department
    components.  Computer systems owned by other agencies are
    excluded from this policy and are governed by the policies of
    those agencies.

3.  **POLICY**.

    a.  **Approval for Deviation from Policy**.  No component shall
        issue any less restrictive policy with respect to the
        acceptable and prohibited use of Department computer systems
        and Department provided Internet resources (e.g., Internet
        electronic mail, World Wide Web access, Department Internet

Web site) without written approval of the Department Chief Information Officer. Components may issue further implementing guidance on such use consistent with this policy without written approval. Components may not deviate from the monitoring and access provisions of this order.

b.   **Use of Department Computers and Computer Systems**.

(1)   Use of departmental computer systems, including but not limited to Internet e-mail, departmental e-mail, word processing systems, and connections to Internet sites, is subject to the same restrictions on use as are other government-furnished resources provided for the use of employees. (See 5 C.F.R. §§ 2635.101(b)(9) and 2635.704(a).)

(2)   While departmental computer systems are provided for official use, some personal use of government computer systems is permitted in accordance with existing policy on personal use of government property, where there is negligible cost to the government and no interference with official business. (See 28 C.F.R. § 45.4.)

c.   **Prohibited Use of Department Computers and Computer Systems**.

(1)   The following activities are prohibited on department computers and computer systems during working or non-working hours, except when conducting legitimate departmental business with the express prior permission of the employee's supervisor:

(a)   Use of Internet sites that result in an additional charge to the government.

(b)   The obtaining, viewing, or transmitting of sexually explicit material, contraband, or other material inappropriate to the workplace.

(c)   Use for other than official governmental business that results in operational slowdowns or delays in conducting departmental business (e.g., mass mailings or sending or downloading large files such as programs, pictures, video files, or games).

(d)   Any otherwise prohibited activity, such as sending out solicitations or engaging in prohibited political activity.

(2) Downloading and/or installing any program, software or executable file on department computers is prohibited unless approved in accordance with component IT security policy.

(3) Employees may not use department computers or computer systems in a way that infringes any copyright, patent, trademark, trade secret or other proprietary right of any party. Further guidance on copyright will be addressed in separate Department policy.

d. **No Expectation of Privacy.** Individual employees should NOT expect privacy in the use of government computers or computer systems. The Department may access e-mail messages, files, records, or other documents on government computer systems whenever it has a legitimate governmental purpose for doing so.

e. **Monitoring or Access to E-mail or Documents on Computer Systems.** Use of departmental computer systems constitutes consent to monitoring.

(1) **Authorized Access.** Monitoring and accessing employees' e-mail messages, Internet activities, documents, files, or other use of departmental computer systems that are restricted by a password or other security mechanism may only be done for authorized purposes. Accessing shared storage (i.e., a public or a shared server disk drive) does not constitute accessing another employee's computer system.

(2) **Authorized Purposes for Monitoring or Access** include:

(a) For system administration and system security.

(b) For investigatory purposes by the Office of Professional Responsibility, the Office of the Inspector General, the Federal Bureau of Investigation, or the Criminal Division.

(c) In response to a court order, grand jury subpoena, or search warrant.

(d) In order to prevent death or serious injury to any person.

(3) **Authorizing Officials.** Access to an employee's computer system for any other reason, such as for

suspected misconduct not connected with an official investigation by one of the offices listed above, must be authorized by:

(a)   The head of the Bureau where the employee works, for Bureau personnel.

(b)   The head of the Executive Office of U.S. Attorneys (EOUSA), for EOUSA personnel.

(c)   The head of the Executive Office of U.S. Trustees (EOUST), for EOUST personnel.

(d)   The head of the National Drug Intelligence Center (NDIC), for NDIC personnel.

(e)   The Assistant Attorney General for Administration for all other components.

This authority may not be delegated below the level of a principal deputy.

(4)   **Notification of Monitoring**.  All components are required to provide adequate notice to their employees that their use of the departmental computer system constitutes consent to monitoring.  The Standard Warning Banner promulgated by the Department's Chief Information Officer provides such adequate notice.

(5)   **Employee Activities**.  Nothing in this policy creates any enforceable rights; however, unauthorized use or monitoring or improper access to an employee's computer system may result in disciplinary action. Employees are prohibited from accessing the e-mail, electronic files or documents, or otherwise monitoring the online activities of another employee except in accordance with this policy.


/s/PAUL R. CORTS
   Assistant Attorney General
   for Administration

# Exhibit C

# to Declaration of Jonathan Tukel dated July 31, 2009



USE AND MONITORING OF DOJ COMPUTERS AND COMPUTER SYSTEMS

**Approval Date:** December 2, 2008

**Approved By:**    Lee J. Lofthus
Assistant Attorney General
for Administration

**Distribution:**  BUR/H-1; OBD/H-1; SPL-23

**Initiated by:**  Justice Management Division
Office of General Counsel

1.  **PURPOSE.**  This order states the Department's policy on the use of departmental computers and computer systems, the lack of expectation of privacy with respect to such use, and authorized monitoring or access to information on departmental computers and computer systems.

2.  **SCOPE.**  This policy applies to all classified and unclassified computer systems and peripheral devices (such as Personal Electronic Devices) that are acquired for use by, owned, operated, or managed by a departmental component.  A privately-owned computer or device that is connected to a departmental computer system is considered to be a departmental computer system while so connected.  This policy applies to all Department components.

3.  **POLICY.**

    a.  **Approval for Deviation from Policy.**  No component shall issue any less restrictive policy with respect to the acceptable and prohibited use of Department computer systems and Department provided Internet resources (e.g., Internet electronic mail, World Wide Web access, Department Internet Web site) without written approval of the Department Chief Information Officer.  Components may issue further implementing guidance on such use consistent with this policy

without written approval.  Components may not deviate from the monitoring and access provisions of this order.

b.   **Use of Department Computers and Computer Systems.**

   (1)   Use of departmental computer systems, including but not limited to Internet e-mail, departmental e-mail, word processing systems, and connections to Internet sites, is subject to the same restrictions on use as are other government-furnished resources provided for the use of employees.  (See 5 C.F.R. § 2635.101(b)(9) and 2635.704.)

   (2)   While departmental computer systems are provided for official use, some personal use of government computer systems is permitted in accordance with existing policy on personal use of government property, where there is negligible cost to the government and no interference with official business.  (See 28 C.F.R. § 45.4.)

c.   **Prohibited Use of Department Computers and Computer Systems.**

   (1)   The following activities are prohibited on department computers and computer systems during working or non-working hours, except when conducting legitimate departmental business with the express prior permission of the employee's Component Head, Deputy Component Head or Field Office Head:

      (a)   Use of Internet sites that result in an additional charge to the government.

      (b)   Using government office equipment for activities that are illegal, inappropriate, or offensive to fellow employees or the public.  Such activities include: hate speech, or material that ridicules others on the basis of race, creed, religion, color, sex, disability, national origin, or sexual orientation.

(c)  The creation, download, viewing, storage, copying, or transmission of sexually explicit or sexually oriented materials or materials related to illegal gambling, illegal weapons, terrorist activities, and any other illegal activities or activities otherwise prohibited.

(d)  Use that could cause congestion, delay, or disruption of service to any government system or equipment, unless for legitimate departmental business.  For example, electronic greeting cards, video, sound or other large file attachments can degrade the performance of the entire network, and should not be viewed or sent on Department computers.  Accessing continuous data streams (such as viewing streaming video or listening to streaming audio/radio on a media website) could also degrade the performance of the entire network and is an inappropriate use (except when access is provided by the Department or is otherwise authorized).

(e)  The creation, copying, transmission, or retransmission of chain letters or other unauthorized mass mailings regardless of the subject matter.

(f)  Any use to circumvent security controls on Department or other external systems.

(g)  Knowingly using anonymizer sites (anonymizer sites hide the user's identity from the Internet site being visited; however, in doing so, they also bypass the blocking mechanism designed to protect Department systems from malicious Internet sites).

(h)  Knowingly visiting malicious resources or sites.

(i)  Using peer-to-peer (P2P) file sharing sites on the Internet (e.g., sites dedicated to downloading audio or video files), or using IP telephony sites.

        (j)    Use for commercial purposes or in support of "for-profit" activities or in support of other outside employment or business activity (e.g., consulting for pay, sales or administration of business transactions, sale of goods or services).

        (k)    Any otherwise prohibited activity, such as sending out solicitations, participating in any lobbying activity, or engaging in prohibited political activity.

        (l)    Use for posting agency information to external newsgroups, bulletin boards or other public forums without authority. This includes any use that could create the perception that the communication was made in one's official capacity as a Federal Government employee, unless appropriate Agency approval has been obtained, or uses at odds with the agencies mission or positions.

        (m)    Downloading, exchanging, e-mailing, or otherwise using or making available any material (such as computer software or music) in a way that infringes upon any copyright, patent, trademark, trade secret or other proprietary or privacy right of any party.

   (2)    Downloading and/or installing any program, software or executable file on department computers is prohibited unless approved in accordance with component IT security policy.

  d.    **Proper Representation** It is the responsibility of employees to ensure that they are not giving the false impression that they are acting in an official capacity when they are using government office equipment for nongovernment purposes. If there is expectation that such a personal use could be interpreted to represent an agency, then an adequate disclaimer must be used. One acceptable disclaimer is – "The contents of this message are mine personally and do not reflect any position of the Government or

my agency." The Standards of Conduct states – "…an employee shall not use or permit the use of his Government position or title or any authority associated with his public office in a manner that could reasonably be construed to imply that his agency or the Government sanctions or endorses his personal activities…" (5 CFR § 2635.702(b)).

e.  **No Expectation of Privacy.** Individual employees should NOT expect privacy in the use of government computers or computer systems. The Department may access e-mail messages, files, records, or other documents on government computer systems whenever it has a legitimate governmental purpose for doing so.

f.  **Monitoring, Disclosing, or Accessing E-mail or Documents on Computer Systems.** Use of departmental computer systems constitutes consent to monitoring and disclosure of information stored on or transiting the departmental computer system as provided below. The Department routinely conducts monitoring and intercepts communications for security purposes and to detect improper use. Such monitoring and interception includes the use of software tools that examine the content of Internet communications and email, and block access to known or suspected malicious Internet sites. The Department may block or otherwise prevent any improper use or activity prohibited in section 3.c. above.

    (1)  **Authorized Access.** Monitoring, disclosing, and accessing another employee's e-mail messages, Internet activities, documents, files, or other information stored on or transiting the departmental computer system may only be done for authorized purposes. Accessing shared storage (i.e., a server or disk drive intended for shared or public access) does not constitute accessing another employee's computer system.

    (2)  **Authorized Purposes for Monitoring, Disclosing, or Accessing:**

        (a)  For system administration and system security.

        (b) For investigatory purposes by, or as authorized by, the Office of Professional Responsibility, the Office of the Inspector General, the Federal Bureau of Investigation, or the Criminal Division.

        (c) In response to a court order, grand jury subpoena, or search warrant.

        (d) In order to prevent death or serious injury to any person.

(3) **Authorizing Officials.** Access to an employee's computer system for any other reason, such as for suspected misconduct not connected with an official investigation by one of the offices listed above, must be authorized by:

        (a) The head of the Bureau where the employee works, for Bureau personnel;

        (b) The head of the Executive Office for U.S. Attorneys, for U.S. Attorneys personnel;

        (c) The head of the Executive Office for U.S. Trustees (EOUST), for EOUST personnel;

        (d) The head of the National Drug Intelligence Center (NDIC), for NDIC personnel; or

        (e) The Assistant Attorney General for Administration for all other components.

This authority may not be delegated below the level of a principal deputy.

(4) **Notification of Monitoring and Disclosure.** All components are required to provide adequate notice to their employees that their use of the departmental computer system constitutes consent to monitoring and disclosure. The Standard Warning Banner promulgated by the Department's Chief Information Officer provides such adequate notice.

(5) **Employee Activities.** Nothing in this policy creates any enforceable rights; however,

unauthorized use or monitoring or improper access
to an employee's computer system may result in
disciplinary action or criminal prosecution.
Employees are prohibited from accessing the e-
mail, electronic files or documents, or otherwise
monitoring the online activities of another
employee except in accordance with this policy.

g.   **Sanctions for Misuse.**  Unauthorized or improper use of
     Department office equipment could result in loss of
     use or limitations on use of equipment, disciplinary
     or adverse actions, and/or criminal penalties.


/s/  Lee J. Lofthus
     Assistant Attorney General
       for Administration

**Exhibit D**

**to Declaration of Jonathan Tukel dated July 31, 2009**

# UNITED STATES ATTORNEYS OFFICE

Justice Consolidated Office Network (JCON II)

# Security Documentation:

# System Security Plan

April 21, 2000
*Revised: June 14, 2000*

LIMITED OFFICIAL USE 

# Table of Contents

1.....................................................................................................SYSTEM IDENTIFICATION
..................................................................................................................................... 1
    1.A.    **Responsible Organization** ....................................................................... 1
    1.B.    **System Name/Title** .................................................................................. 1
    1.C.    **System Category** ...................................................................................... 1
    1.D.    **System Operational Status** ...................................................................... 1
    1.E.    **General Description/Purpose** ................................................................... 1
    1.F.    **System Environment and Special Considerations** ................................... 5
    1.G.    **Information Contact(s)** ............................................................................ 9
2...........................................................................................Sensitivity of Information Handled
..................................................................................................................................... 9
    2.A.    **Applicable Laws or Regulations Affecting JCON II** ........................... 9
    2.B.    **General Description of Information Sensitivity** .................................... 9
    2.C.    **Information Handled by the System/Need for Protective Measures**............. 10
        2.C.1.    **Confidentiality**...................................................................... 10
        2.C.2.    **Integrity**................................................................................ 11
        2.C.3.    **Availability**........................................................................... 11
    2.D.    **Estimated Risk/Magnitude of Harm** ................................................... 12
3...............................................................................................SYSTEM SECURITY MEASURES
................................................................................................................................... 13
    3.A.    **Risk Assessment and Management** ...................................................... 13
        3.A.1    **Risk Assessment and Management Methodology and Specialist** ...... 13
        3.A.2.    **Items Included in the Risk Analysis** ..................................... 13
        3.A.3.    **How Risks Were Determined for This System** ................................... 13
    3.B.    **Applicable Guidance** ............................................................................. 14
    3.C.    **Security Control Measure Status - General Support Systems**........................ 15
        3.C.1    **Management Controls** .......................................................... 15
        3.C.2.    **Acquisition/Development/Installation Controls** ................................. 17
        3.C.3.    **Operational Controls** ........................................................... 17
        3.C.4.    **Security Awareness and Training** ......................................... 27
        3.C.5.    **Technical Controls** ............................................................... 27
        3.C.6    **Controls Over Application Security** .................................... 29
4..................................................................................................... ADDITIONAL COMMENTS
................................................................................................................................... 30
5.......................................................................... COMPONENT MANAGEMENT INFORMATION
................................................................................................................................... 30
    5.A.    **Plan Development and Review** ....................................................... 30
        5.A.1.    **Plan Developed By** .............................................................. 30
        5.A.2.    **Is System Covered in Component Automated Information Systems (AIS) Tactical Plan?**............................................................... 30
        5.A.3.    **Are There Any Internal Control Actions Required or Issues Pending** 30
        5.A.4.    **Does Your Component Have Written ADP Security Policies,**

Procedures, Standards, or Requirements? .......................................... 31

     **5.A.5.** **Computer Systems Security Officer** ................................................... 31

     **5.A.6.** **Plan Reviewed and Approved by Component Management** ............ 31

**APPENDIX A: Rules of Behavior** ............................................................................ 32

**APPENDIX B: EOUSA Field Office Router Bandwidth Table** ............................. 37

**APPENDIX C: USAO Field Office Server Deployment Table** ............................... 44

**APPENDIX D: USAO Contact List** ......................................................................... 55

### APPENDIX A: Rules of Behavior

### Automated Information Systems Security Principles

VIOLATION OF THESE RULES MAY
RESULT IN DISCIPLINARY ACTION

### General Principles

The following principles of behavior apply to all EOUSA employees, and to personnel supplying IRM services and using EOUSA's information resources, e.g., contractors and volunteers. Because written guidance cannot cover every contingency, personnel are asked to go beyond the stated principles, using their best judgement and highest ethical standards to guide their actions. Personnel must understand that these principles are based on Federal laws, regulations and DOJ Orders. As such, there are consequences for non-compliance with principles of behavior. Depending on the severity of the violation, at the discretion of management and through due process of the law, consequences can include: suspension of access privileges, reprimand, suspension, demotion, removal, and criminal and civil penalties.

1.    **Accountability:** Employees must be accountable for their actions and responsibilities related to information resources entrusted to them.

2.    **Confidentiality:** Employees must protect sensitive information from disclosure to unauthorized individuals or groups.

3.    **Passwords and User IDs:** Employees must protect information security through effective use of user IDs and passwords. Each system user will be assigned a unique personal identifier and password that shall be used to establish all personal accounts and access privileges for the individual. Protect your passwords!

4.    **Hardware:** Employees must protect computer equipment from damage, abuse, and unauthorized use. This includes DOJ-owned hardware located at employees' place of residence and portable personal computers used for business while on travel.

5.    **Reporting:** Employees must report security violations and vulnerabilities to their office's Computer Systems Security Officer (CSSO).

6.    **Privileged Users:** Privileged users must perform their duties meticulously and reliably in order to preserve information security. Privileged users include: system administrators; computer operators; system engineers (those with control of the operating system); network administrators; those who have access to change control parameters for equipment and software; database administrators; those who control user passwords and access levels; and troubleshooters/system maintenance personnel.

7.    **Work at Home And Other Remote Users:** Remote users must establish security standards at their workplace sufficient to protect hardware, software, and information. This includes having

only those resources you really need and have authority to use; establishing a thorough understanding and agreement with your supervisor as to what your security responsibilities are; using software according to licensing agreements; ensuring that sensitive information that is downloaded is properly safeguarded, and that dial-in access is secure; and being alert for anomalies and vulnerabilities, reporting these to their CSSO, and seeking advice when necessary.

8.      **Users of Personal Information:**  Users must acquire and use personal information only in ways that respect an individual's privacy.  This includes: properly destroying personal information contained in hard copy or electronic format; and ensuring that personal information is accurate, timely, complete, and relevant for the purpose which it is collected, provided, and used.


**Automated Information Systems Security Rules**

These rules of behavior are based on the general principles of behavior.


1.      **Official Business**

       a.      Do not steal hardware, software, information, or equipment.
       b.      Do not develop computer programs for non-work purposes.
       c.      Limit use of the computer for non-work purposes to non-business hours.

       *[Justice Property Management Regulation (JPMR), 41 CFR pt 28* allows personal use of government equipment, as long as there is negligible cost to the department and it does not interfere with official business.  Furthermore, the regulation goes on to state: "In using government property, employees should be mindful of their responsibilities to protect and conserve such property **and to use official time in an honest effort to perform official duties**." (Emphasis added).


2.      **Access**

       a.      Only use data for which you have been granted authorization.
       b.      Do not retrieve information from a system for someone who does not have authority to access the information.  Only give information to people who have access authority and who need the information for their jobs.
       c.      Abide by procedures governing the channels for requesting/disseminating information.
       d.      Limit the number of people who can access your files/data.
       e.      Do not access external computer systems (such as bulletin boards) unless necessary to perform an official duty.
       f.      Do not attempt to gain access to information to which you do not have authority.
       g.      Use access control features such as screen saver passwords and password protecting highly sensitive files.

3.  **Integrity**

   a.  Discontinue use of any PC or LAN system or software that show indications of being infected with a virus.
   b.  Protect against viruses and similar malicious programs.  Use only authorized software; do not use shareware, public domain software, or similar programs unless they are authorized.
   c.  Never enter unauthorized, inaccurate, or false information.
   d.  Do not manipulate information inappropriately.
   e.  Create only authorized records or files.
   f.  Avoid "data diddling."
   g.  Scan all files and disks for viruses before use, especially if they are received from external sources.


4.  **Availability**

   a.  Plan for contingencies such as disaster, loss of information, and disclosure of information by preparing alternate work strategies and recovery mechanisms.
   b.  Make backups of hard drive files on a regular basis.
   c.  Write protect backups.
   d.  Store backups away from the originals.
   e.  Keep storage media away from devices that produce magnetic fields.
   f.  Protect disks from food and drink spills.


5.  **Hardware/Software**

   a.  Safeguard computer equipment against waste, loss, abuse, unauthorized use, and misappropriation.
   b.  Only use equipment for which you have been granted authorization.
   c.  Do not eat, drink, or smoke near computer equipment and media.
   d.  Do not store combustible materials near a computer.
   e.  Do not remove a PC or other computer hardware from EOUSA premises without a property pass.
   f.  Only remove computer equipment from EOUSA premises for official purposes.
   g.  Do not allow someone to perform maintenance without proper identification.
   h.  Only use software for which you have been granted authorization.
   i.  Do not install unauthorized or public domain software without the approval of your systems administrator.

6.    **Reporting**

Report all security violations, incidents, and vulnerabilities to your CSSO.

7.    **Privileged Users,** e.g., Systems Administrators, Case Managers, Database Administrators, Systems Engineers, etc.

a.    Protect the supervisor or root password at highest level demanded by the sensitivity
level of the system.
b.    Do not develop programs for non-work purposes.
c.    Help train users on appropriate use and security of system.
d.    Watch for unscheduled or unauthorized programs running on a recurring basis.
e.    Report all security incidents to the CSSO and the EOUSA's Security Programs
Manager (SPM).
f.    Track all security incidents occurring within your area of responsibility.
g.    Take action to reduce damage caused by security incidents, as appropriate, e.g., lock
up property, log off of a terminal, and disconnect a PC with a virus from the LAN.
h.    Establish a firewall or other means of protection, i.e., separate server, for all servers
connected to publicly accessible networks.
i.    Establish security measures to ensure integrity, privacy, and availability of
information on publicly accessible systems.
j.    Establish virus protection for servers that are publicly available.

8.    **Users of Public Access Systems,** e.g., Internet, Court Systems, etc.

a.    Do not transmit Limited Official Use or other highly sensitive information across
public access systems.
b.    Use virus protection software when receiving information from a public access
system.
c.    Ensure that information placed on a public access system presents a professional
image.
d.    Ensure that information placed on a public access system is up-to-date, accurate, and
true.
e.    Ensure that information placed on a public access system reflects the policies and
positions of the EOUSA and DOJ.
f.    Do not distribute or receive documents via public access systems in violation of
copyright laws.

9.    **Managers**

a.    Notify SPM whenever an employee terminates or changes status.
b.    Ensure continued availability of data when a employee terminates by assisting the
CSSO with completing the ***Departing Employees/Contractors/Volunteers EOUSA
Automation Clearance Form*** on the last day the departing individual is in the office.

    c.    Counsel terminating employees on non-disclosure of confidentially-sensitive information.

    d.    Request that the SPM or CSSO terminate access to information and computer systems immediately in the event of an unfriendly separation.

    e.    Escort employee off the premises when there is likelihood of sabotage, as with an unfriendly termination or separation.

    f.    Ensure employees get adequate and appropriate training to do their job.

**Exhibit B**

**to Jonathan Tukel's
Motion and Memorandum of Law to Intervene
to Assert Various Privileges in Response to
Plaintiff's Motion to Compel Production from
Defendant United States Department of Justice**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| RICHARD G. CONVERTINO | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 04-00236 (RCL) |
| | ) | |
| v. | ) | |
| | ) | |
| UNITED STATES DEPARTMENT OF JUSTICE, | ) | |
| *et al.* | ) | |
| | ) | |
| Defendants. | ) | |

**NOTICE OF APPEARANCE**

NOTICE IS HEREBY GIVEN that James K. Robinson of Cadwalader, Wickersham & Taft LLP, enters his appearance on behalf of Jonathan Tukel in the above-captioned action. All files, papers, and correspondence should be addressed to:

James K. Robinson
Cadwalader, Wickersham & Taft LLP
700 Sixth Street, N.W.
Washington, D.C. 20001
(202) 862-2494
(202) 862-2400 (facsimile)
jim.robinson@cwt.com

Respectfully submitted this 31st day of July, 2009.

_____/s/ James K. Robinson_____

James K. Robinson (D.C. Bar No. 446925)
Cadwalader, Wickersham & Taft LLP
700 Sixth Street, N.W.
Washington, D.C. 20001
(202) 862-2494
(202) 862-2400 (facsimile)
jim.robinson@cwt.com

Counsel for Jonathan Tukel