**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| RICHARD G. CONVERTINO | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. #  1:04CV0236(RCL) |
| | ) | |
| UNITED STATES DEPARTMENT OF JUSTICE, | ) | |
| *et al.,* | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**PLAINTIFF RICHARD G. CONVERTINO'S OPPOSITION TO NON-PARTY**
**JONATHAN TUKEL'S MOTION TO INTERVENE**

Plaintiff Richard G. Convertino, by and through counsel, hereby files his Opposition to

non-party Jonathan Tukel's Motion to Intervene to Assert Various Privileges.  As set forth

below, Mr. Tukel has failed to request intervention in a timely fashion.  Fact discovery

commenced more than five years ago and, as a former party to this case, Mr. Tukel had ample

notice that he might have an interest in these proceedings.  Furthermore, intervention is futile

because Mr. Tukel has already waived the privileges he desires to assert through intervention.

The Court cannot allow Mr. Tukel to interfere with and unnecessarily prolong discovery in this

manner.  For these reasons, and those set forth below, the Court should deny Mr. Tukel's motion

and order the DOJ to immediately produce the documents Bates-stamped DOJ6000414-419,

DOJ6000469-504, DOJ6000508-555, DOJ6000615-616, DOJ7000401, and DOJ7002894-2980.

Due to the length of the exhibit attached to this filing, a printed courtesy copy has been

sent to the Court via Federal Express.

## ARGUMENT

Non-party Jonathan Tukel has requested permissive intervention under Fed. R. Civ. P.

24(b)(1)[1] in order to assert the attorney-client and work product privileges over certain

correspondences between himself and his attorney, which are in the possession of Defendant

Department of Justice ("DOJ").  The Court should deny this Motion because Mr. Tukel has

identified no "common question of fact or law" to permit his intervention.  The Court should also

deny this Motion as untimely due to its late filing and the futility of any attempts to assert the

privileges Mr. Tukel wishes to raise.  Mr. Tukel is a former party to this litigation – litigation

that is now in its fifth year.  He had ample prior opportunity to intervene to assert his rights.

Furthermore, the simple fact that the DOJ is in possession of those documents means that Mr.

Tukel has waived any privilege he might have had.

## II.     THE COURT SHOULD DENY MR. TUKEL'S MOTION BECAUSE THERE ARE NO COMMON QUESTIONS OF LAW OR FACT

Mr. Tukel requests permissive intervention under Fed. R. Civ. P. 24(b)(1)(B), which

states that "[o]n a timely motion, the court may permit intervention to anyone who . . . has a

claim or defense that shares with the main action a common question of law or fact."  However,

Mr. Tukel makes no attempt to identify a common question of law or fact as, indeed, none exists.

Permissive intervention under Rule 24(b)(1)(B) exists in order to promote judicial

efficiency by disposing of related claims and controversies together.  *EEOC v. National*

*Children's Ctr.*, 146 F.3d 1042, 1045 (D.C. Cir. 1998); *see also Diamond v. Charles*, 476 U.S.

54, 76, 90 L. Ed. 2d 48, 106 S. Ct. 1697 (1986) (O'Connor, J., concurring) ("The words 'claim or

---

[1] Mr. Tukel's brief cites to Fed. R. Civ. P. 24(b)(2), likely citing the numbering system used prior to the 2007 amendments to the rule.  The relevant wording is now contained in Fed. R. Civ. P. 24(b)(1)(B).

defense' manifestly refer to the kinds of claims or defenses that can be raised in courts of law as part of an actual or impending law suit …."); *Security Insurance Co. v. Schipporeit, Inc.*, 69 F.3d 1377, 1381 (7th Cir. 1995) ("Perhaps the most obvious benefits of intervention in general are the efficiency and consistency that result from resolving related issues in a single proceeding.").

However, Mr. Tukel desires to intervene in order to raise personal privileges over documents that the DOJ otherwise intends to produce.  No questions of fact are implicated in this action, and the applicability of the privileges Mr. Tukel seeks to raise are unique to him.  But for his intervention, these questions of law would never arise.  As such, permissive intervention is inappropriate and the Court should deny Mr. Tukel's Motion.

**III.    THE COURT SHOULD DENY MR. TUKEL'S MOTION BECAUSE IT IS UNTIMELY DUE TO ITS LATE FILING AND THE FUTILITY OF RIGHTS TO BE ASSERTED.**

Permissive intervention under Rule 24(b)(1)(B) is entirely at the discretion of the court. However, in its determination, the Court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights. Fed. R. Civ. P. 24(b)(3). Moreover, an untimely motion for intervention, whether of right or permissive, must be denied. *United States. v. American Tel. and Tel. Co. ("AT&T")*, 642 F.2d 1285, 1294 (D.C. Cir. 1980); *Moten v. Bricklayers Int'l Union*, 543 F.2d 224, 228 (D.C. Cir. 1976).

In deciding the timeliness of a request for permissive intervention, the Court looks to the totality of the circumstances, with particular consideration towards the "time elapsed since the inception of the suit, the purpose for which intervention is sought, the need for intervention as a means of preserving the applicant's rights, and the probability of prejudice to those already parties to the case." *United States v. British Am. Tobacco Australia Serv, Ltd.* 437 F.3d 1235,

2

1238 (D.C. Cir. 2006) (quoting *AT&T*, 642 F.2d at 1295).[2]  Finally, "a court should be more

reluctant to deny an intervention motion on grounds of timeliness if it is intervention as of right

than if it is permissive intervention." *AT&T*, 642 F.2d at 1295.  As set forth below, Mr. Tukel's

Motion is unambiguously untimely.

### A.       The Motion Was Filed Far Too Late

Any would-be intervenor has a duty to file his motion to intervene promptly upon

learning that his rights might be affected.  *See British Am. Tobacco*, 437 F.3d at 1238.  Here, by

his own admission, Mr. Tukel has sat on his rights for nearly five months, and perhaps as long as

five years.  Such a delay is wholly unreasonable and so the Court should deny Mr. Tukel's

Motion as untimely on its face.  *Id.* at 1239 (denying motion to intervene as a right because

motion was filed "nearly six months" after receiving notice of the issues on which it intended to

intervene).

In his Declaration, Mr. Tukel avers that he learned that the DOJ had the emails in

question in "April 2009," Tukel Decl. ¶ 10, yet he did not move to intervene until nearly five

months later on July 31.  However, Mr. Tukel had at least constructive notice of Mr.

Convertino's discovery request as early as 2004, when Mr. Convertino filed the instant suit.

As the Court is well aware, Mr. Convertino originally named Mr. Tukel as a defendant in

this litigation.  While Mr. Tukel was dismissed as a defendant in 2005, he cannot now argue that

he had no knowledge that his rights might be implicated by Mr. Convertino's suit.  Indeed, as

recently as this April, Mr. Tukel acknowledged that he has been following Mr. Convertino's

---

[2] Although an intervention of right under Fed. R. Civ. P. 24(a) might be considered timely even
when made relatively late in the main action, courts treat late requests for permissive
intervention far more harshly.  *See, e.g.*, *Kinsey v. Legg, Mason & Co., Inc.*, 62 F.R.D. 462, 463
(D.D.C. 1974); *see also Stallworth v. Monsanto Co.*, 558 F.2d 257, 266 (5th Cir. 1977),
*Cameron v. President and Fellows of Harvard Coll.*, 157 F.2d 993, 996 (1st Cir. 1946).

continuing efforts to discover the identities of the individual(s) who leaked private information

about him to the Detroit Free Press.  Exhibit A, Tukel Dep. at pp 15-28 (Apr. 24, 2009).  It is

thus wholly indisputable that Mr. Tukel knew that Mr. Convertino was seeking the identities of

the leaker(s), and that Mr. Convertino would demand all information in the DOJ's possession or

control related to the OIG's investigation into the leak.[3]

Furthermore, while "elapsed time alone may not make a motion for intervention

untimely," *British Am. Tobacco*, 437 F.3d at 1239, in this case it is more than sufficient given

that, as set forth below, Mr. Tukel has already waived the privileges that he intends to assert

through intervention.

> **B.**      **Even if the Motion to Intervene was filed at an appropriate time, This Court Must Still Deny it Because Mr. Tukel has Already Waived the Privileges he Desires to Assert**

In addition to considerations of time of filing, courts must also consider "the purpose for

which intervention is sought" and the need to "preserve the applicant's rights."  *British Am.*

*Tobacco*, 437 F.3d at 1238.  Here, Mr. Tukel requests intervention in order to assert the attorney-

client and work product privileges.  However, allowing him to intervene for this purpose would

only create undue expense and delay, since he has already waived both of these privileges by

disclosing the documents in question to the DOJ.  *Seenited States ex rel. Schweizer v. Oce, N.V.*,

577 F. Supp. 2d 169, 174 (D.D.C. 2008) (Lamberth, C.J.) (both the attorney-client and work

---

[3] While Mr. Tukel avers that he did not know the DOJ had copies of the emails in question, as set forth below, his Declaration proves that he had at least constructive knowledge that these documents might exist.

product privileges are waived if the protected materials are disclosed to third parties who lack a

common interest with the disclosing party).[4]

i.      *Mr. Tukel has waived the attorney-client privilege because he disclosed*
        *the emails to a third party*

The party asserting attorney-client privilege has the burden of establishing that the

privilege applies to the communications in question.  *In re Lindsey*, 148 F.3d 1100, 1106 (D.C.

Cir. 1998).  However, disclosing information purportedly protected by the attorney-client

privilege to third parties, even inadvertently, completely destroys the privilege.  *In re Sealed*

*case*, 877 F.2d 976, 980-81 (D.C. Cir. 1989).  This is so because "the amount of care taken to

ensure confidentiality reflects the importance of that confidentiality to the holder of the privilege.

If a client wishes to preserve the privilege it must treat the confidentiality . . . like jewels, if not

crown jewels."  *Id.*  Mr. Tukel's decision to use a government-supplied email despite at *least*

constructive notice of monitoring fails to meet this high standard.  Indeed, the very fact that the

Department of Justice has possession of the emails, on its own, means Mr. Tukel has waived any

claim of privilege he might have otherwise have had.

The fact that Mr. Tukel used his DOJ-provided email to send and receive the emails in

question also demonstrates waiver.  The materials Mr. Tukel attached to his declaration are rife

with warnings that emails sent via his DOJ-provided account were subject to monitoring and

access by the DOJ.  For example, Exhibit A to his declaration states that "JCON is a Department

of Justice system.  When you use it, you are consenting to monitoring… We will be vigorous in

---

[4] Although Mr. Tukel's arguments regarding privilege are here addressed as a means of further
establishing that his filing is not timely, Mr. Convertino reserves his right to file a motion in
opposition to the filing that Mr. Tukel has incorporated as Exhibit A if this Court should find that
he may intervene.

our monitoring efforts."  Dkt. # 130-2, Tukel Decl., Ex. A, p. 1.  Exhibit B to his declaration

elaborates on this warning, stating:

> d.    **No Expectation of Privacy**.  Individual employees should NOT expect privacy in the use of government computers or systems.  The Department may access e-mail messages, files, records, or other documents on government computer systems whenever it has a legitimate governmental purpose for doing so.

> e.    **Monitoring or Access to E-mail or Documents on Computer Systems.** Use of departmental computer systems constitutes consent to monitoring.

> (2)    **Authorized Purposes for Monitoring and Access** include:

> (c)    In response to a court order, grand jury subpoena, or search warrant.

Dkt. # 130-2, Tukel Decl., Ex. B, p. 3 (emphasis in original).

By attaching these documents to his declaration, and stating in his declaration that he was

aware that they allowed him to use his email for personal purposes (Tukel Decl., ¶ 2), Mr. Tukel

admits knowledge of their contents.  As such, the very fact that he chose to use such an

unsecured system for transmitting supposedly confidential documents aptly demonstrates "the

importance of that confidentiality to the holder of the privilege" -- very little.

None of Mr. Tukel's arguments come close to curing the carelessness with which he

treated his communications with his attorney.  Like the defendants in *In re Sealed Case*, 877

F.2d at 980, who inadvertently disclosed confidential communications to a government agency

through a "bureaucratic error," Mr. Tukel has utterly failed to take adequate care to preserve the

confidentiality of his correspondence with his attorneys and has thus waived the privilege.

Accordingly, allowing him to intervene to assert this privilege would be futile and unnecessarily

delay the resolution of this case.

ii.     *Mr. Tukel has also waived his work-product privilege by disclosing the documents to a third party.*

Disclosure of work-product that is "inconsistent with the maintenance of secrecy from the disclosing party's adversary" is not protected. *United States v. Thompson*, 562 F.3d 387, 394 (D.C. Cir. 2009) (internal quotation omitted). In other words, a party waives the work product privilege if "the party had no reasonable basis for believing that the disclosed materials would be kept confidential." *Id.*

Here, Mr. Tukel's use of his DOJ email account to transmit the documents in question was wholly "inconsistent with the maintenance of secrecy from the disclosing party's adversary." As Mr. Tukel admits, the emails in question concerned drafts and responses to the Office of the Inspector General's ("OIG") draft report of its findings concerning the leak at issue in Mr. Convertino's suit. Under these circumstances, where Mr. Tukel has personally retained counsel in an effort to get the OIG to make changes to its report, his "adversary" is the OIG, which is part of the DOJ. As such, he can hardly claim that disclosing to the DOJ the contents of his communications with his attorneys regarding the OIG report is "consistent" with maintaining the secrecy of those communications.

Nor did Mr. Tukel have any reasonable basis to believe that materials transmitted via his DOJ email address would be kept confidential. As highlighted above, Mr. Tukel knew, or should have known, that all such correspondence was subject to monitoring and access by the DOJ, and that the DOJ could produce it via a court order. As he admits in his brief, he is the "sole holder" of any work product privilege regarding these documents, so he had no basis to believe that the DOJ would resist disclosing the documents. Indeed, when challenged by Mr. Convertino, the DOJ asserted no privileges over the emails in question and retained them solely

7

to permit Mr. Tukel's attempt to intervene.  As such, by giving these documents to the DOJ, he waived his right to later claim the work product privilege.

Furthermore, it is not clear that the work product privilege even applies to these documents.  The privilege exists to prevent the discovery of litigation materials by opposing counsel and, as such, only protects materials "created for use at trial or because a lawyer or party reasonably anticipated that *specific* litigation would occur and prepared the document to advance the party's interest in the successful resolution of *that* litigation."  *Willingham v. Ashcroft*, 2005 U.S. Dist. LEXIS 22258, *6 (D.D.C. Oct. 4, 2005) (emphasis added); *In re Sealed Case*, 146 F.3d 881, 884 (D.C. Cir. 1998); *see also EEOC v. Lutheran Soc. Servs.*, 186 F.3d 959, 968 (D.C. Cir. 1999) (In reviewing documents claimed to be protected by the work-product privilege, the court must determine "whether, in light of the nature of the document or the factual situation in a particular case, the document can fairly be said to have been prepared or obtained *because of* the prospect of litigation.") (emphasis added).  Moreover, if documents 'would have been created in essentially similar form irrespective of the litigation[,] . . . it [cannot] fairly be said that they were created 'because of' actual or impending litigation.'" *Willingham*, 2005 U.S. Dist. LEXIS 22258 at *6-7 (quoting *United States v. Adlman*, 134 F.3d 1194, 1202-03 (2nd Cir. 1998)).

As explained above, Mr. Tukel's "adversary" for the purposes of these emails was the OIG, not Mr. Convertino.  While matters related to the OIG draft report might concern facts related to Mr. Convertino's allegations, the OIG investigation and report are entirely independent from the instant litigation.  Indeed, according to Mr. Tukel's brief, the emails in question mostly contain "communications between Mr. Tukel and his counsel exchanging drafts of responses or letters concerning the OIG investigation report."  Mr. Tukel likely would have done this

8

irrespective of Mr. Convertino's suit, so he cannot claim that the documents were created "because of" the instant litigation.

As such, because Mr. Tukel's use of his DOJ-email account was unambiguously "inconsistent with the maintenance of secrecy from the disclosing party's adversary," allowing him to intervene to assert this privilege would be futile and unnecessarily delay the resolution of this case.

### CONCLUSION

As set forth above, Mr. Tukel's intervention creates undue, additional hardships in an already extensive proceeding. Mr. Tukel has utterly failed to show that he meets the requirements of Rule 24(b)(1) for permissive intervention, and he has already waived the privileges that he desires to intervene to assert. That Mr. Tukel, who was once party to this suit and who has followed this litigation for more than five years, comes forward now to make a groundless attempt to intervene to assert privileges over emails that allegedly pertain to letters that the DOJ has already produced in discovery only further highlights the untimeliness of his Motion.

Accordingly, Mr. Convertino respectfully requests that this Court deny Mr. Tukel's Motion to Intervene and immediately order the DOJ to produce to Mr. Convertino the documents Bates-stamped DOJ6000414-419, DOJ6000469-504, DOJ6000508-555, DOJ6000615-616, DOJ7000401, and DOJ7002894-2980.

Respectfully submitted,

_____/s/_____

Erik D. Snyder
Kohn, Kohn & Colapinto, LLP
3233 P St. NW

Washington, DC 20007
Tel: (202) 342-6980
Fax: (202) 342-6984
Attorney for Mr. Convertino

Dated: August 11, 2009

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 11, 2009, I electronically filed the foregoing paper(s) with

the Clerk of the Court using the ECF system, which shall send notice to all counsel of record.


Respectfully submitted,

_____/s/_____
Erik D. Snyder
Kohn, Kohn & Colapinto, LLP
3233 P St. NW
Washington, DC 20007
Tel: (202) 342-6980
Fax: (202) 342-6984
Attorney for Mr. Convertino

11