**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **RICHARD G. CONVERTINO,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action 04-0236 (RCL)** |
| | ) | |
| **UNITED STATES DEPARTMENT OF** | ) | |
| **JUSTICE,** *et al.*, | ) | |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

**MEMORANDUM OPINION**

This matter comes before the Court on the plaintiff's Motion [116] to Compel Production from defendant.  Upon consideration of the plaintiff's motion, the defendant's opposition [129] thereto, the plaintiff's reply [145] brief, the defendant's surreply [149], the applicable law, and the entire record herein, the Court concludes that the plaintiff's motion will be DENIED.  The Court's reasoning is set forth below.

Upon consideration of Jonathan Tukel's Motion and Memorandum of Law to Intervene in Response to Plaintiff's Motion to Compel Production [130], the plaintiff's opposition [132] thereto, Jonathan Tukel's reply [136], the applicable law, and the entire record herein, the Court concludes that Jonathan Tukel's motion will be GRANTED.

**BACKGROUND**

Plaintiff, Richard G. Convertino filed the Complaint against the United States Department of Justice ("DOJ") on February 13, 2004, raising two counts.  (Compl. ¶¶ 24-143.) One count has been dismissed leaving only whether defendant willfully and intentionally disclosed information to a reporter for the Detroit *Free Press* in violation of the Privacy Act, 5

1

U.S.C. § 552a.  (Def.'s Opp'n to Pl.'s Mot. to Compel at 3-4.)  The disclosed information most likely consisted of one or more documents from an investigation into plaintiff's conduct by defendant's Office of Professional Responsibility ("OPR").  (Compl. ¶¶ 109-113.)

The OPR began an investigation in November of 2003 after the United States Attorney's Office for the Eastern District of Michigan referred allegations of prosecutorial misconduct against Assistant United States Attorney Richard Convertino—former lead trial counsel in the case of *United States v. Koubriti*.  (Def.'s Opp'n to Pl.'s Mot. to Compel Ex. 12 at 1.)  The OPR crafted a series of letters stating what issues the OPR would investigate and which it would not.  (*Id.*)  A limited number of people had access to these private letters.  On January 17, 2004 an article addressing the investigation by OPR was written by David Ashenfelter and  published in the Detroit *Free Press*.  (*Id.*)  Following the leak, the Office of the Inspector General ("OIG") began an investigation to determine who provided the information to the press, ultimately concluding that there was insufficient evidence to prove, by a preponderance of the evidence, who the leaker was.  (*Id.* Ex. 12 at 16.)

Plaintiff filed this motion to compel production of 736 various documents that plaintiff believes are responsive to his discovery requests.  (*Id.* at 1, Exs. 1, 2.)  Defendant has categorized these documents as privileged, either by the deliberative process privilege, the work product doctrine, or the attorney-client privilege and thus claims the documents are not discoverable.  (*Id.* at 3-27.)  Plaintiff has requested that the Court review the documents *in camera* "to the extent that the applicability of the deliberative process privilege is not clear . . . ."  (*See* Pl.'s Reply to Def.'s Opp'n to Pl.'s Mot. to Compel at 1.)

## **DISCUSSION**

Plaintiff's motion to compel discovery is DENIED because the 736 documents requested are protected by various privileges.  Fed. R. Civ. P. 26(b)(1) requires a party to disclose any material the other party requests that is relevant to plaintiff's claim or defendant's defense, if it is not protected by a privilege.  Fed. R. Civ. P. 26(b)(1) (". . . parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party.").  Neither party disputes that the 736 documents requested are relevant to the Complaint.  (Pl.'s Mot. to Compel at 4-6.)  Again, the Complaint alleges that defendant violated plaintiff's rights under the Privacy Act by disclosing information to the press.  (Compl. ¶¶ 91-143).  "[T]o establish a claim under the Privacy Act, a party 'must prove that: (1) the agency 'disclosed' information; (2) the information 'disclosed' is a 'record' contained within a 'system of records'; (3) an adverse impact resulted from the disclosure; and (4) the agency's disclosure was willful or intentional.'"  *See Alexander v. FBI*, 193 F.R.D. 1, 6 (D.D.C. 2000) (Lamberth, J.) (*quoting Barry v. United States Dep't of Justice*, 63 F. Supp. 2d 25, 27 (D.D.C. 1999)); *see also Laningham v. United States Navy*, 813 F.2d 1236, 1242 (D.C. Cir. 1987) (requiring the Privacy Act violation to be "so patently egregious and unlawful that anyone undertaking the conduct should have known it was unlawful").  To prove his case, plaintiff must show that someone leaked information to the press and that they did so willfully or intentionally.  Documents that concern plaintiff may be useful to establish the elements of the claim, including the intent of the leaker.  (Pl.'s Mot. to Compel at 5-6.)  All of the documents contained within the privilege log concern plaintiff in one fashion or another, making them relevant to the cause of action.  (*See* Def.'s Opp'n to Pl.'s Mot. to Compel Ex. 1.)

**I. Deliberative Process Privilege**

The deliberative process privilege acts to shield documents from discovery requests.  It protects "advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated."  *In re Sealed Case*, 121 F.3d 729, 737 (D.C. Cir. 1997) (*quoting Carl Zeiss Stiftung v. V.E.B. Carl Zeiss, Jena*, 40 F.R.D. 318, 324 (D.D.C. 1966)).  The purpose of the privilege is to protect the decision-making process of the government by creating an environment where people can freely express their opinions and debate alternative approaches before a decision is made.  *See id.*  To qualify for the privilege the document must be both "predecisional" and "deliberative."  The defendant has classified 697 documents as protected by this privilege.  (Def.'s Opp'n to Pl.'s Mot. to Compel at 6.)

A. Predecisional and Deliberative

The documents requested are both predecisional and deliberative.  (Def.'s Opp'n to Pl.'s Mot. to Compel at 6.)  "[A] document is deliberative if it 'reflects the give-and –take of the consultative process,' . . . [a document is predicisional if it] 'reflect[s] the agency "give-and-take" leading up to a decision that is characteristic of the deliberative process.'"  *See Access Reports v. Dep't of Justice*, 926 F.2d 1192, 1195 (D.C. Cir. 1991) (*quoting Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980)).

Although there are too many documents to go into detail on how each satisfies the privilege requirements, the plaintiff does not effectively dispel the contention that the documents are both predicisional and deliberative.  (Def.'s Opp'n to Pl.'s Mot. to Compel at 6; *cf.* Pl.'s Mot. to Compel at 10-11.)  Further, defendant has attached "declarations from officials in the relevant DOJ components formally asserting the deliberative process privilege over the withheld documents."  (Def.'s Opp'n to Pl.'s Mot. to Compel at 2.)  The documents fall into 10 various

groups including; (1) notes and summaries by the OIG investigator, (2) other documents related to the OIG investigation, (3) documents related to inquires by Congress, (4) documents and correspondence to/from non-OIG/OPR government officials regarding those investigations, (5) documents related to plaintiff's September 9, 2003 testimony before the Senate Finance Committee, (6) documents related to the Public Integrity investigation/criminal charges against plaintiff, (7) documents related to personnel actions regarding plaintiff, (8) documents related to the OPR investigation, (9) documents related to multiple or unspecified investigations, and (10) documents related to Koubriti litigation and file review.  (Pl.'s Mot. to Compel at 16-24.) Although the documents fall under the deliberative process privilege plaintiff argues that they are not protected because (a) the documents are directed at the defendant's intent, (b) the documents are discoverable because the government participated in misconduct, and/or (c) plaintiff's need for the documents is greater than defendant's need to prevent the chilling effect.  (*Id.*)

B. Exceptions

The balancing test, discussed later on, and typically applied to the privilege, is not needed when one of two exceptions apply; (1) the government's intent is squarely at issue or (2) there is any evidence of governmental misconduct.  *See generally Alexander*, 193 F.R.D. at 10 (explaining the deliberative process privilege).  Plaintiff essentially raises two separate concerns in his motion to compel and his reply and therefore reasons that the deliberative process privilege should not apply.  The first concern, which plaintiff believes entitles him to the disclosure of the government documents, is the investigation into whether the defendant actually acted willfully or intentionally in the leak of private information about plaintiff, in violation of the Privacy Act. (Pl.'s Reply to Def.'s Opp'n to Pl.'s Mot. to Compel at 1-5.)  The second concern, which plaintiff also believes removes the deliberate process privilege, is whether defendant retaliated

against plaintiff by attempting to cover-up the leaker(s).  (*Id.* at 6.) The Court finds that the second concern is not legitimate and therefore, the only documents that may even be discoverable are documents that could reveal the potential leaker(s)' intent in the disclosure of the information to the press or government misconduct.

### 1. The Government Intent Exception

The deliberative process privilege does not apply when the "government's intent is squarely at issue." *See Tri-State Hosp. Supply Corp. v. United States*, No. 00-1463, 2005 U.S. Dist. LEXIS 33156, at *23-25  (D.D.C. Dec. 16, 2005) (explaining that when intent is at issue there is no need for an evidentiary showing of government misconduct to overcome the privilege).  "If the plaintiff's cause of action is directed at the government's intent . . . it makes no sense to permit the government to use the privilege as a shield."  *In re Subpoena Duces Tecum Served on the Office of the Controller of the Currency*, 145 F.3d 1422, 1424 (D.C. Cir. 1998). The unavailability of the privilege "is limited to those circumstances in which the cause of action is directed at the agency's subjective motivation."  *In re Subpoena Duces Tecum Served on the Office of the Comptroller of the Currency* (*In re Subpoena Duces Tecum II*), 156 F.3d 1279, 1279 (D.C. Cir. 1998) (on petition for rehearing en banc).  "The privilege was fashioned in cases where the decisionmaking process is collateral to the plaintiff's suit."  *In re Subpoena Duces Tecum*, 145 F.3d at 1424-25.

The first concern raised by plaintiff is related to the intent of the individual(s) when they leaked the confidential information.  The Privacy Act requires that the government's actions be "willful" or "intentional."  *See Alexander*, 193 F.R.D. at 6.  "[I]f either the Constitution or a statute makes the nature of governmental officials' deliberations the *issue*, the privilege is a nonsequitur."  *In re Subpoena Duces Tecum*, 145 F.3d at 1424.  However, the government

deliberations are not being challenged—it is the decision of the individual(s) who leaked the information that is at issue and without knowing whom that individual is we cannot look at their intent. *Cf. Tri-State Hosp. Supply Corp.*, 2005 U.S. Dist. LEXIS 33156, at *5 (finding privilege inapplicable because the "claims place the government deliberations process squarely at issue"); (Def.'s Surreply in Opp'n to Pl.'s Mot. to Compel at 10-11 n.8.)  Plaintiff is requesting documents that are deliberative and predecisional to various decisions defendant made, but not specifically to the decision to leak the private information.  Thus the decision-making process is collateral to plaintiff's cause of action. *Cf. In re Subpoena Duces Tecum*, 145 F.3d at 1424-25 (explaining that the privilege stands when the decision-making process is "collateral" to the cause of action).  As defendant points out "documents that could even arguably reveal such intent have already been produced.  Included in the more than 10,000 pages of documents produced by the Department in this case are the drafts and final versions of the OPR referral letter, . . . drafts and final version of the OIG report, and audio recordings, transcripts, and affidavits obtained from every witness interviewed during the OIG investigation."  (Def.'s Opp'n to Pl.'s Mot. to Compel at 16.)  Plaintiff has all of the factual information gathered during the investigations as well.  (*Id.*)

The documents plaintiff is now requesting are related to internal investigations and look at the opinions of government employees in conducting investigations, talking with Congress, and dealing with potential misconduct on the part of plaintiff.  (*See* Def.'s Opp'n to Pl.'s Mot. to Compel Ex. 1.)  They do not look at the intent of the potential leaker.  (*Id.*)  The privilege remains even if the motive of the government is relevant to some inquiry in the case, as long the government's subjective motivation is not the very "essence of a claim."  *See GE v. Johnson*, No. 00-2855, 2006 U.S. Dist. LEXIS 64907, at *23-24 (D.D.C. Sept. 12, 2006).

This case is difficult because at this time it is unknown who disclosed the information to the press, therefore, it is impossible to determine if they did so willfully or intentionally. Plaintiff relies on *Alexander* as support for his argument that the Privacy Act puts the government's intent directly at issue.  (Pl.'s Mot. to Compel at 11-12.)  In *Alexander* the Court found that the government had participated in misconduct but stated that "even without considering the misconduct exception, it appears that the deliberative process privilege would not be applicable in this case," because the deliberative process privilege "'does not apply when a cause of action is directed at the government's intent.'" *Alexander*, 193 F.R.D. at 10 n.14 (*quoting In re Subpoena Duces Tecum II*, 156 F.3d at 1279).  *Alexander* can be distinguished from this case however by noting that the government admitted that it "improperly obtained FBI files . . . but [] claims it was simply an unintentional mistake." *Id.*  That put the government's intent squarely at issue.  However, on the facts of this case, the government's intent cannot be put squarely at issue until we know whether a government actor did in fact disclose the private information to the press and at this time the government has not admitted to disclosing the information.  (Pl.'s Mot. to Compel at 12 n.1.)

The government's intent in the requested documents is *collateral* to the cause of action and thus protected by the privilege.  This cause of action is not looking directly at government decision-making, but rather it is looking at who leaked information to the press and why. Although the law is not clear about which government deliberations become exposed when the government's intent is squarely at issue it seems clear that it would be the deliberations leading up to the Privacy Act violation, not other random deliberations that should be disclosed.  Unless there are reasons to suspect that government misconduct occurred the privilege does not disappear.  *See In re Sealed Case*, 121 F.3d at 738.

### 2. The Government Misconduct Exception

"[T]he privilege disappears altogether when there is any reason to believe government misconduct occurred." *Id.* The deliberative process "privilege is routinely denied" when the documents "may" uncover government misconduct because society has an interest in an honest government. *See id.* at 738 (*quoting Texaco Puerto Rico, Inc. v. Dep't of Consumer Affairs*, 60 F.3d 867, 885 (1st Cir. 1995)); *see also Alexander v. FBI*, 186 F.R.D. 170, 177 (D.D.C. 1999) (Lamberth, J.) (finding that misconduct is more than a factor to be considered, it removes the privilege).

The misconduct that took place in this case is the disclosure of the private information to the press. Plaintiff has produced evidence to suggest potential governmental misconduct. The information found in the *Free Press* article is also in one or more of the OPR referral letters. (Pl.'s Reply to Def.'s Opp'n to Mot. to Compel Ex.12 at 3-5.) Further, only DOJ employees had access to this information so it would be difficult for the *Free Press* to obtain the information without at least the assistance of a DOJ employee. (*Id.* at 12 n.1.) When the misconduct exception applies certain documents become discoverable. "To the extent that the applicability of the deliberative process privilege is not clear," plaintiff has requested "that the Court review the documents *in camera* to determine whether they are privileged." (Pl.'s Reply to Def.'s Opp'n to Pl.'s Mot. to Compel at 19-20.) Finding that the documents are relevant as well as deliberative and predicisional, the Court was willing to look at many of the documents *in camera* to see if they should be released because of governmental misconduct. *See In re Sealed Case*, 121 F.3d at 746 (noting that documents that have a slight chance of revealing misconduct should be reviewed).

The Court Ordered the defendant to turn over certain requested documents to the Court by November 20, 2009.  The documents that were reviewed *in camera* were the documents listed in footnotes 1-6 in the Court's Memorandum Opinion [151].  These documents were from Categories 3 (in part), 4, 5, 6, 7, 8, 9, and 10 of plaintiff's classification system.  (*See* Pl.'s Mot. to Compel at 16-24.)  Because it is apparent that leaking confidential information to the press is misconduct it was possible that these documents may have shed light on governmental misconduct.  After careful review of the documents, the Court has determined that the documents are what the defendant claims them to be.  (*See* Def.'s Opp'n to Pl.'s Mot. to Compel Ex. 1.) The Court found no signs of the governmental misconduct alleged by plaintiff.  Therefore, the deliberative process privilege remains in tact for all documents requested by plaintiff in his motion to compel and no documents will be turned over to the plaintiff.

The remaining categories (1 and 2 and parts of 3) that were not reviewed *in camera* are also still protected by the deliberative process privilege.  First, these documents are not relevant to the misconduct committed by the leaker.  There must be at least some connection between the government misconduct and the documents for the privilege to yield.  *See McPeek v. Ashcroft*, 202 F.R.D. 332, 335 (D.D.C. 2001) (finding the privilege does not disappear when not challenging the final decision made by a government official).  Second, plaintiff has failed to make a viable claim to a grand cover-up—failing to provide any evidence of suspicions of wrongdoing during the investigations.  There should be some connection between plaintiff's cause of action and the final decision.  (Def.'s Opp'n to Pl.'s Mot. to Compel at 16.)

### 3. Exceptions Do Not Apply Because there is No Evidence of a Government Cover-Up

The second concern plaintiff raises is that the DOJ attempted to cover-up the leakers(s) and therefore, the documents may expose information regarding this concern.  (*See* Pl.'s Reply to

Def.'s Opp'n to Mot. to Compel at 2-5.)  Plaintiff is essentially trying to "relitigate his

previously dismissed retaliation claim."  (Def.'s Surreply in Opp'n to Pl.'s Mot. to Compel at 2.)

The retaliation claim was dismissed on October 19th, 2005 because the Court lacked subject-

matter jurisdiction.  (Mem. and Op. at 10.)  Plaintiff even states himself that "the leak was just

one part of the DOJ's greater campaign of retaliation against him for testifying to Congress,"

citing to the earlier dismissed count of plaintiff's original Complaint.  (Pl.'s Reply to Def.'s

Opp'n to Pl.'s Mot. to Compel at 4.)  Plaintiff attempts to circumvent the deliberative process

privilege by raising this second concern of a grand scheme of retaliation and cover-up.

### i. Government Intent and Misconduct Exceptions Applied

Neither exception applies to the documents requested based on plaintiff's argument that

there was a grand cover-up scheme created by the DOJ.  As discussed above the government's

intent is not at issue because plaintiff has not produced any evidence to suggest a cover-up by

DOJ and therefore, the government's intent exception does not apply.  The documents being

challenged are not documents that discuss a potential deliberate decision by the government to

cover-up the identity of the leaker(s)—which would reveal the government's intent.

Despite plaintiff's attempts to view the privileged documents there is no evidence of

misconduct.  "If there is any reason to believe the information sought may shed light on

government misconduct, public policy (as embodied by the law) demands that the misconduct

not be shielded merely because it happens to be predecisional and deliberative."  *Alexander*, 186

F.R.D. at 177-78.  Other than plaintiff's assertions that because the OIG investigator was unable

to come to a conclusion and several DOJ employees disliked plaintiff there must have been

misconduct, plaintiff has not provided any evidence of misconduct, including any evidence that

would challenge the government's intent.  Plaintiff must provide enough reason to believe

misconduct took place.  *Cf. Hinckley v. United States*, 140 F.3d 277, 285 (D.C. Cir. 1998)

(noting that the privilege would be meaningless, "if all someone seeking information otherwise

protected under the privilege had to establish is that there was disagreement within the

governmental entity at some point in the decisionmaking [sic] process.").  In *Hinckley*, the court

denied plaintiff's motion for documents concerning internal deliberations on whether to grant

conditional relief, in part, because plaintiff made "no colorable showing that the Review Board

acted improperly."  *Id.* at 286.  Further, just because there was disagreement, reaching different

conclusions does not immediately suggest "improper motivations."  *Id.* at 285-86.  The purpose

of the deliberative process privilege would be defeated if all a party had to do was claim

misconduct every time it did not like the outcome of a government decision or policy and they

wanted access to the thought process.

        In addition, the Court does not need to reach a conclusion at this time as to whether the

deliberate process privilege protects the documents relevant to the OIG investigation or used by

the investigation, or if it does protect the documents, whether an exception applies in regards to

plaintiff's second concern because plaintiff is judicially estopped from raising this argument.

                                    ii. Judicial Estoppel

        Judicial estoppel is a rule that prevents a party from taking one position in one legal

proceeding, succeeding in that position, and then later taking a contrary position.  *See Mason v.

United States*, 956 A.2d 63, 66 (D.C. Cir. 2008) ("[J]udicial estoppel, generally prevents a party

from prevailing in one phase of a case on an argument and then relying on a contradictory

argument to prevail in another phase.").  The Supreme Court has stated, and this Court has

adopted that, while

        "the circumstances under which judicial estoppel may appropriately be invoked are
        probably not reducible to any general formulation of principle," [] several factors

typically inform the decision whether to apply the doctrine in a particular case: First, a party's later position must be "clearly inconsistent" with its earlier position. Second, courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create "the perception that either the first or the second court was misled[.]" Absent success in a prior proceeding, a party's later inconsistent position introduces "no risk of inconsistent court determinations," and thus poses little threat to judicial integrity. A third consideration is whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.

*See Prince Constr. Co. v. District of Columbia Contract Appeals Bd.*, 892 A.2d 380, 386-87 n.7

(D.C. Cir. 2006) (*quoting New Hampshire v. Maine*, 532 U.S. 742, 750-51 (2001) (citations

omitted)).

Plaintiff's position is clearly inconsistent with his earlier position.  Earlier in this

litigation plaintiff asked for a court order requiring David Ashenfelter, the Detroit *Free Press*

reporter, to appear for a deposition.  (Def.'s Surreply in Opp'n to Pl.'s Mot. to Compel at 10-11.)

Plaintiff argued before the court that (1) it could not make a case without knowing the identity of

the individual who leaked the information and (2) because "the OIG had conducted a complete

and thorough investigation" without finding the leaker, plaintiff would not be able to do so

without deposing Mr. Ashenfelter.  (*Id.*)  Now, in plaintiff's Reply to Defendant's Opposition to

his Motion to Compel Production, plaintiff is claiming that defendant interfered with the OIG

investigation to cover-up prior wrongdoing, thus tainting the OIG investigation.  (Pl.'s Reply to

Def.'s Opp'n to Pl.'s Mot. to Compel at 6.)  These positions are clearly inconsistent with each

other.  By arguing that the OIG investigation was thorough, plaintiff essentially argued that there

was not enough evidence to prove that the government had covered up the leaker and cannot now

ask for the OIG reports claiming that the OIG did an insufficient job during the investigation.

Plaintiff succeeded in convincing the court to grant plaintiff's motion, forcing Mr.

Ashenfelter to comply with a deposition.  (Def.'s Surreply in Opp'n to Pl.'s Mot. to Compel at

11-12.)  The court's decision was made, in part, based on the fact that OIG investigation had been very thorough and it would be burdensome, less convenient, and more expensive for plaintiff to depose all of the individuals as well.  (*Id.*)  Therefore, plaintiff needed to go directly to the source, Mr. Ashenfelter, to inquire about the leak.  (*Id.*)

Last, defendant would be put at an unfair advantage if plaintiff were allowed to assert these contrary opinions.  Defendant, who relied on plaintiff's acceptance of the OIG report as a thorough investigation, would be forced to defend itself on more discovery requests for a claim that had already been dismissed.  (*See* Mem.and Op. Granting Def.'s Partial Mot. to Dismiss.) For the foregoing reasons plaintiff is judicially estopped from arguing that the OIG investigation was not thorough or complete and therefore needs access to relevant documents.

<u>C. Plaintiff's Need Does not Outweigh the Government's Interest in Maintaining Privacy</u>

When neither exception applies the Court must then look to balance the needs of each side to determine whether the deliberative process privilege should stand.  As far as the documents that are privileged and not excluded by an exception to the deliberative process privilege they still are not discoverable by general need.  "The deliberative process privilege is a qualified privilege and can be overcome by a sufficient showing of need."  *See In re Sealed Case*, 121 F.3d at 737; *see also GE v. Johnson*, 2006 U.S. Dist. LEXIS 64907, at *25-26 (noting the privilege is a qualified protection and will "yield in the face of a party's overriding need"). Competing interests must be considered and balanced including "'the relevance of the evidence,' 'the availability of other evidence,' 'the seriousness of the litigation,' 'the role of the government,' and the "possibility of future timidity [that would compromise deliberative candor] by government employees.'" *In re Sealed Case*, 121 F.3d at 737-38 (*quoting In re Subpoena Served Upon the Comptroller of the Currency,* 967 F.2d 630, 634 (D.C. Cir. 1992)).  The needs

of the government override the needs of plaintiff.  The privilege is "predicated on the recognition

that the quality of administration decision-making would be seriously undermined if agencies

were forced to operate in a fishbowl." *Dow Jones & Co. v. Dep't of Justice*, 917 F.2d 571, 573

(D.C. Cir. 1990).  We need to encourage candid communications among governmental officials,

allowing officials to deliberate honestly with each other, without fear that their discussions will

be exposed to the public.  *See Ryan v. Dep't of Justice*, 617 F.2d 781, 789-90 (D.C. Cir. 1980).

DOJ employees/investigators need to be encouraged to take notes and make observations while

conducting investigations without fear that those notes will be exposed just because someone

disagrees with their final decision.  Documents where plaintiff may discover the intent of the

leaker have already been given to plaintiff.  It is highly unlikely that plaintiff will discover the

intent of the leaker in the documents requested in plaintiff's motion to compel.  To protect the

purposes behind the privilege, the documents are not discoverable.

## II. Work Product Doctrine

Three documents (Bates DOJ6000558-DOJ6000559, DOJ6000560-DOJ6000561, and

DOJ7001076-DOJ70001077) have now been classified by the defendant as protected by the

Work Product Doctrine.  (Def.'s Opp'n to Pl.'s Mot. to Compel at 26.)  This number has been

reduced from 95 documents to 3 documents since plaintiff filed his original Motion to Compel.

(Pl.'s Mot. to Compel at 7.)  The work product doctrine protects materials prepared in

anticipation for litigation unless the "party shows that is has a substantial need for the materials .

. . and cannot, without undue hardship, obtain their substantial equivalent by other means."  Fed.

R. Civ. P. 26(b)(3).  Plaintiff has not demonstrated a "substantial need" for the materials which

consist of e-mails discussing the DOJ's litigation strategy and a set of notes discussing the DOJ's

response to plaintiff, written by the DOJ's counsel in this lawsuit.  (Def.'s Opp'n to Pl.'s Mot. to

Compel at 26.)  Because plaintiff has failed to demonstrate a "substantial need" for these three

documents the Court is denying plaintiff's request for discovery.

### III. Attorney-Client Privilege

The defendant has also classified 36 e-mails between Jonathan Tukel and his private

counsel as protected by the attorney-client privilege.  The DOJ does not claim privilege over

these documents.  The Court turns to the motions submitted by Mr. Tukel to decide these specific

issues.

Mr. Tukel was originally a named defendant—being sued in his official capacity—on

Count I of the Complaint which was subsequently dismissed by the court on October 19, 2005.

Mr. Tukel was serving as First Assistant United States Attorney of the Eastern District of

Michigan when this case was filed and remained in this position until May 2005.  (Compl. ¶ 7.)

Mr. Tukel was one of the original parties that initiated confidential personal matters related to

plaintiff.  (*Id.* ¶ 93.)  Plaintiff was required to meet with Mr. Tukel to discuss the review of the

cases that had been handled by plaintiff.  (*Id.* ¶ 96.)  Mr. Tukel was part of a committee that

drafted and sent allegations to OPR and he was one of the recipients of OPR's letters indicating

which allegations it would investigate. (*Id.* ¶ 105.)

In anticipation of litigation, Mr. Tukel retained private counsel Cadwalader, Wickersham

& Taft LLP ("Cadwalader").  (Tukel's Mot. and Mem. of Law in Opp'n to Pl.'s Mot. to Compel

at 3.)  While working for defendant, Mr. Tukel used his DOJ-provided e-mail address to

communicate with Cadwalader.  (*Id.* at 2.)  The e-mails were sent between Mr. Tukel and

Cadwalader, no one else was included on the e-mails.  (*Id.* at 3.)  Mr. Tukel now asserts privilege

over these 36 e-mails that the defendant obtained through its e-mail server.

The Court will grant Mr. Tukel's motion to intervene [130] for the "limit[ed] purpose of asserting his attorney-client privilege and invoking the work product doctrine regarding the Privilege Documents." *Id.* Mr. Tukel can intervene under Rule 24(b)(1)(B)'s permissive intervention. *See* Fed. R. Civ. P. 24(b). "On timely motion, the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact," as long as the intervention does not "unduly delay or prejudice the adjudication of the rights of the original parties." *Id.* at 24(b)(1)-(3).

Mr. Tukel's intervention satisfies the prong of Rule 24 requiring that a claim shares a common question of law or fact with the main action. This Court has reasoned:

> To bar intervention for collateral discovery issues merely because they do not concern the subject matter of the overall action would in many cases defeat the general purpose of intervention. The Supreme Court has stated that intervention aims to protect interests which are "of such a direct and immediate character that the intervenor will either gain or lose by the direct legal operation and effect of the judgment." [*Smith v. Gale*, 144 U.S. 509, 518 (1892) (*quoting Horn v. Volcano Water Co.*, 13 Cal. 62, 69 (1859)).] To be protected by means of intervention, the interest must be "a legal interest as distinguished from interests of a general and indefinite character. . . ." [*Radford Iron Co. v. Appalachian Elec. Power Co.*, 62 F.2d 940, 942 (4th Cir. 1933), *quoted in Cascade Natural Gas Corp. v. El Paso Natural Gas Co.*, 386 U.S. 129, 145 (1967) (Stewart, J., dissenting).] Privileges such as the work product privilege satisfy this definition of legal interest and can be directly lost through the operation of a discovery order. Without the right to intervene in discovery proceedings, a third party with a claim of privilege in otherwise discoverable materials could suffer "the obvious injustice of having his claim erased or impaired by the court's adjudication without ever being heard." [*Cascade Natural Gas Corp. v. El Paso Natural Gas Co.*, 386 U.S. 129, 145 (1967) (Stewart, J., dissenting).]

*United States v. American Telephone & Telegraph Co., et al.*, 642 F.2d 1285, 1292 (D.C. Cir. 1980). Both the attorney-client privilege and the work product doctrine satisfy the definition of legal interest. Mr. Tukel need not have a common question of law or fact with the entire suit as long as it relates to individual issues. *See United States v. American Telephone & Telegraph Co.*, 642 F.2d 1285,1291 (D.C. Cir. 1980).

Further, Mr. Tukel's motion is timely.  Discovery in this case is still ongoing.  *See In re Vitamins Antitrust Litigation*, No. MISC. 99-197, 2001 WL 34088808, at \*3-4 (D.D.C. Mar. 19, 2001) (permitting intervention when discovery was still ongoing).  Mr. Tukel did not know that the DOJ had collected potentially privileged material until April of 2009.  (Reply in Supp. of Tukel's Mot. and Mem. of Law in Opp'n to Pl.'s Mot. to Compel at 3.)  On July 31, 2009, less than four months later, Mr. Tukel filed his request for intervention, which was consistent with the schedule set by the Court to reply to plaintiff's motion to compel.  In fact, Mr. Tukel did not share a common question of law or fact with the action until plaintiff filed the motion to compel, requesting the potentially protected documents.  Fed. R. Civ. P. 24(b).  An intervention under these facts will not "unduly delay or prejudice the adjudication."  *Cf. id.* at 24(b)(3).  As stated above, Mr. Tukel filed his motion to intervene by the time defendant was required to respond to plaintiff's motion to compel.  His motion applies to no other documents than those cited by plaintiff in his motion to compel and thus does not delay or prejudice the adjudication.  Mr. Tukel may intervene into this suit for the limited purpose of claiming attorney-client privilege and work product doctrine over a limited number of documents.

Because the motion to intervene has been granted the Court must now decide whether the 36 documents are protected by either the attorney-client privilege or the work product doctrine.  A party may waive either privilege by disclosing confidential information to a third-party, however, no waiver exists if "(1) the disclosure is inadvertent;" and "(2) the holder of the privilege or protection took reasonable steps to prevent disclosure."  Fed. R. Evid. 502(b).  In this case, the disclosure was inadvertent.  Mr. Tukel had no intentions of allowing the DOJ, his employer, to read the e-mails he was sending to his personal attorney through his work e-mail account.  (*See* Tukel's Mot. and Mem. of Law in Opp'n to Pl.'s Mot. to Compel at 4.)  Mr. Tukel

also took steps to delete the e-mails as they were coming into his account—failing to realize that his employer had the e-mails. (*Id.* at 4-5.)  Additionally, since discovering that the DOJ still had access to his e-mails in April 2009, Mr. Tukel has taken reasonable steps to prevent disclosure to more parties by filing a motion and memorandum of law to intervene.  (*Id.* at 5.)

Mr. Tukel reasonably expected his e-mails with his personal attorney to remain confidential.  (*Id.*)  Case law in this jurisdiction is not directly on point but New York gives the Court some direction.  "[T]he question of privilege comes down to whether the intent to communicate in confidence was objectively reasonable."  *In re Asia Global Crossing, Ltd.*, 322 B.R. 247, 258 (S.D.N.Y. 2005).  In order for documents sent through e-mail to be protected by the attorney-client privilege there must be a subjective expectation of confidentiality that is found to be objectively reasonable.  *See id.* at 257 (outlining four factors to determine reasonableness; "(1) does the corporation maintain a policy banning personal or other objectionable use, (2) does the company monitor the use of the employee's computer or e-mail, (3) do third parties have a right of access to the computer or e-mails, and (4) did the corporation notify the employee, or was the employee aware, of the use and monitoring policies?").  Each case should be given an individualized look to see if the party requesting the protection of the privilege was reasonable in its actions.  *See Curto v. Med. World Commc'ns, Inc.*, No. 03-CV-6327, 2006 WL 1318387, *6 (E.D.N.Y. May 15, 2006); *see also O'Connor v. Ortega*, 480 U.S. 709, 718 (1987) ("Given the great variety of work environments, . . . the question whether an employee has a reasonable expectation of privacy must be addressed on a case-by-case basis.").

On the facts of this case, Mr. Tukel's expectation of privacy was reasonable. The DOJ maintains a policy that does not ban personal use of the company e-mail.  Although the DOJ does have access to personal e-mails sent through this account, Mr. Tukel was unaware that they

would be regularly accessing and saving e-mails sent from his account.  (*See* Tukel's Mot. and Mem. of Law in Opp'n to Pl.'s Mot. to Compel at 4; *see also* Pl.'s Opp'n to Non-Party Tukel's Mot. to Intervene at 5-6.)  Because his expectations were reasonable, Mr. Tukel's private e-mails will remain protected by the attorney-client privilege.

## <u>CONCLUSION</u>

For the above stated reasons, plaintiff's motion will be DENIED.  Further, Jonathan Tukel's motion to intervene will be GRANTED and his motion in opposition to plaintiff's motion to compel will be GRANTED.

Signed by Royce C. Lamberth, United States District Judge, on December 10, 2009.